## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. REYNALDO SOLANO, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-00430-PRW |
| | ) | |
| JOINT TECHNOLOGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss (Dkt. 46); the Response (Dkt. 49), filed by Plaintiff and *qui tam* relator, Reynaldo Solano; Defendants' Reply (Dkt. 52); and Solano's Sur-Reply (Dkt. 56). Also before the Court is Solano's Notice of Supplemental Authority (Dkt. 57), Defendants' Motion to Strike the Notice (Dkt. 58), and Solano's Response (Dkt. 60). For the following reasons, the Court **GRANTS** the Motion to Strike (Dkt. 58) and **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss (Dkt. 46).

### *Background*

The Complaint contains the following well-pleaded facts. Solano has worked in the Durable Medical Equipment, Orthotics, and Supplies ("DMEPOS") field for over 12 years. He is trained in how to properly fit, care for, and monitor patients in need of braces or supports for spine, limb, and joint disorders. Defendant Joint Technology, Inc. sells high-end, customizable DMEPOS nationwide. Because Joint Technology's products necessitate a custom fitting, everything in Joint Technology's catalog requires a doctor's prescription.

1

Government healthcare programs cover DMEPOS only where they are medically necessary and reasonable, taking cost effectiveness into consideration. However, DMEPOS are not designed for pain treatment and are ineligible for coverage when prescribed solely for that purpose. Typically, after a doctor prescribes a DMEPOS device, the patient visits a DMEPOS supplier, which fits the patient with an appropriate brace or support. The supplier then submits a claim to the relevant government healthcare program for reimbursement. Finally, the government reimburses the supplier directly, meaning that the treating physician receives no compensation from the sale.

In 2018, Solano entered into an agreement to solicit referrals on a commission-only basis for the sale of Joint Technology's DMEPOS. Defendants Jim Patton (Joint Technology's President) and Dr. John Barr (Joint Technology's Regional Sales Director) began training Solano in Joint Technology's sales approach. Solano alleges that during his training, he learned that Joint Technology engages in two schemes to defraud government healthcare programs.

I.    **Alleged Conservative Care Scheme**

First, Joint Technology engages in what it calls "Conservative Care," which Solano describes as a business plan designed to protect doctors who are high prescribers of opioids. Joint Technology instructs its sales force to solicit only those in the top 10% of opioid prescribers in each state. Joint Technology allegedly markets its DMEPOS to these doctors as a safeguard against their heightened risk of government scrutiny for overprescription of opioids. Solano alleges that Joint Technology's sales pitch is as follows: "if you prescribe opioids to your patients then you must also prescribe those same patients with one of" Joint

Technology's products, as proof of a non-opioid treatment to alleviate the patient's pain. (Dkt. 1, ¶ 77).

Solano alleges that Joint Technology also told doctors that it would "put documentation in the patient's files that" would "support the medical necessity of all the prior opioid prescriptions the doctor has given the patients." (*Id.*, ¶ 82). In other words, it marketed its DMEPOS, both as a hedge against the risks associated with the doctors' future opioid prescriptions, and as an added safeguard for the doctors' past opioid prescriptions.

Consequently, Solano argues that most, if not all, of Joint Technology's reimbursement claims are fraudulent because they are not medically reasonable or necessary. Specifically, Solano alleges that: (1) the devices were not prescribed for patient treatment, but to protect doctors, (2) many DMEPOS prescriptions were solely for pain treatment, even though DMEPOS are not designed for that purpose; and (3) patients were oversold expensive devices that they did not need, especially in cases where the patient had previously been prescribed opioids.

## II.    Alleged Kickback Schemes

Second, Solano alleges that Joint Technology engages in three kickback schemes to induce doctors to write DMEPOS prescriptions. These include (1) making fake office rental payments to doctors; (2) providing doctors with free in-office assistants; and (3) utilizing a commission-only sales force. When making its reimbursement claims, Joint Technology certified that it did not engage in any illegal kickbacks. But, alleges Solano, because Defendants engaged in these schemes, their reimbursement claims are all tainted with false certifications.

Solano alleges that Joint Technology paid doctors monthly fees as rent under its "In-House Mobility DME Program." He claims these were not legitimate rental agreements but payoffs for prescribing Joint Technology's devices. Both Joint Technology and participating doctors understood the office space was unnecessary. Solano states that the agreements allowed termination at any time and that Joint Technology would stop paying rent "after the doctor has run out of existing patients to refer to Joint Technology." (Dkt. 1, ¶ 122). This is apparently atypical in the industry, where DMEPOS suppliers usually send representatives for fittings to the doctors' offices free of charge.

Also part of the In-House Mobility DME Program, Joint Technology provides an in-office assistant, at no cost to and with no input from the doctor. This assistant's role is to review the doctor's existing patient medical records, identify opioid users, and push doctors to prescribe them DMEPOS for the above-discussed reasons. The assistants meet with patients, select and fit a DMEPOS device, and handle follow-ups. They also complete all paperwork, including writing up the doctor's notes and drafting prescriptions for the doctor to sign.

Finally, Joint Technology uses a "commission only" salesforce, which Solano argues constitutes an illegal kickback. Solano says that the agreement he entered into with Joint Technology is identical to the agreements that it uses with the rest of its sales force.

## III.    Solano's Claims

Solano argues that these alleged schemes constitute violations of the False Claims Act, the Anti-Kickback Statute, and numerous state false claims acts. Consequently, on May 7, 2019, Solano brought a *qui tam* action against Defendants. In addition to Joint

Technology, Patton, and Barr, Solano brings claims against Defendants Dr. Samuel Armitage, Dr. Rodney Sessoms, and Drs. John Doe 1–100, who he alleges took part in the schemes. Specifically, as to Armitage and Sessoms, while Solano was in training, he asked for the names of doctors he could use as references when selling the Conservative Care approach. Joint Technology referred him to Armitage and Sessoms, who previously practiced in North Carolina and had also entered into In-House Mobility DME Agreements. Defendants move to dismiss the Complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

*Legal Standard*

## I.    Rule 12(b)(6)

When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[1] Plaintiffs bear the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[2] The pleaded facts must be sufficient to establish that the claim is plausible.[3] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving

---

[1] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[3] *See id.*

party."[4] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[5]

## II.    Rule 9(b)

Additionally, fraud-based claims, like those under the False Claims Act, must satisfy Rule 9(b)'s heightened pleading standard.[6] Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[7] The purpose of Rule 9(b) is "to afford defendants fair notice of [the] plaintiff's claims and the factual ground upon which they are based."[8]

## III.    The False Claims Act

"The False Claims Act covers all fraudulent attempts to cause the government to pay out sums of money."[9] It does so by permitting recovery of civil penalties and treble damages from, among others,[10] anyone who "knowingly presents, or causes to be

---

[4] *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (citation omitted).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[6] *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 195 n.6 (2016).

[7] Fed. R. Civ. P. 9(b).

[8] *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (cleaned up) (quoting *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010)).

[9] *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 755 (10th Cir. 2019) (cleaned up).

[10] 31 U.S.C. § 3729(a)(1)(C)–(G).

presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[11]

The Act has two enforcement mechanisms, one public and one private. "'First, the [g]overnment itself may' sue 'the alleged false claimant' to remedy the fraud."[12] "Second, 'a private person (the relator) may bring a *qui tam*' suit on behalf of the government and also for herself alleging that a third party made fraudulent claims for payment to the government."[13] "'As a bounty for identifying and prosecuting fraud,' relators get to keep a portion 'of any recovery they obtain.'"[14] The False Claims Act is not, however, "an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations."[15]

To afford a defendant fair notice of a False Claims Act claim, a plaintiff "need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of the scheme."[16] As a practical matter, a False Claims Act plaintiff complies with Rule 9(b) when he "provide[s] factual

---

[11] *See id.* § 3729(a)(1)(A) & (B).

[12] *Reed*, 923 F.3d at 736 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000)).

[13] *Id.* (quoting same).

[14] *Id.* (quoting *U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1172 (10th Cir. 2007)).

[15] *Universal Health Servs.*, 579 U.S. at 194 (internal quotation marks and citation omitted).

[16] *Polukoff*, 895 F.3d at 745 (quoting *Lemmon*, 614 F.3d at 1172).

allegations regarding the who, what, when, where[,] and how of the alleged claims."[17] Thus, a plaintiff generally must allege "actual submissions of a specific request for payment to the government," but it is unnecessary to allege a specific request when the complaint demonstrates the "specifics of a fraudulent scheme and provide[s] an adequate basis for a reasonable inference that false claims were submitted as part of that scheme."[18]

Additionally, courts may consider "whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control."[19] This is because "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."[20]

### *Analysis*

## I.    **The Court strikes the Notice of Supplemental Authority.**

As a preliminary matter, the Court considers Defendants' Motion to Strike (Dkt. 58). On February 26, 2025, Solano filed a Notice of Supplemental Authority (Dkt. 57), notifying the Court of the First Circuit's recent decision in *United States v. Regeneron Pharms., Inc.*[21] LCvR7.1(l) permits parties to file such notices without leave of court, but

---

[17] *Id.* (quoting same).

[18] *United States ex rel. Wagner v. Care Plus Home Health Care, Inc.*, No. 15-CV-260-GKF-JFJ, 2017 WL 6329850, at *4 (N.D. Okla. Dec. 11, 2017) (citing *Lemmon*, 614 F.3d at 1172).

[19] *Polukoff*, 895 F.3d at 741 (citation and internal quotation marks omitted))

[20] *Id.* (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)).

[21] 128 F.4th 324, 330 (1st Cir. 2025).

the notice "shall not contain any argument . . . ." Parties wishing to present argument regarding the new authority "must apply for leave to file a supplemental brief."

Defendants assert that the Notice (Dkt. 57) contains arguments, much of which Solano already raised in his Sur-Reply. Solano represents that he sought only to provide background information. The Court finds that the Notice contains improper argument. In his response to the Motion to Strike, Solano requests leave to file a supplemental brief. The Court finds that additional supplemental briefing is unnecessary, however, as the Motion to Dismiss, Response, Reply, and Sur-Reply adequately brief the issues.[22] Accordingly, the Court **GRANTS** the Motion to Strike (Dkt. 58) and **STRIKES** the Notice (Dkt. 57).

## II. Solano's False Claims Act claims satisfy the requirements of Rule 9(b).

The Court, following Defendants' lead, first addresses their Rule 9(b) arguments as to Solano's federal claims. There are two varieties of False Claims Act claims: factually false claims and legally false claims.[23] "Factually false claims generally require a showing that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided."[24] Legally false claims, on the other hand, "generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment."[25] Furthermore, legally false

---

[22] Additionally, the Court notes Solano's request is not properly before the Court, because the Local Civil Rules prohibit parties from including a motion in their response brief. *See* LCvR7.1(c).

[23] *Polukoff*, 895 F.3d at 741.

[24] *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016) (citation and internal quotation marks omitted).

[25] *Id.*

claims can rest upon one of two theories: express false certification or implied false certification.[26] A claim is based upon an express-false-certification theory when the complaint alleges that "a government payee falsely certifie[d] compliance with a particular statute, regulation or contractual term, where compliance [was] a prerequisite to payment."[27] Conversely, an implied-false-certification claim does not require a false representation; instead, "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading."[28]

Solano brings claims under Sections 3729(a)(1)(A) and (a)(1)(B) of the False Claims Act. While claims under Section 3729(a)(1)(A) may be based upon either an express-false-certification theory or an implied-false-certification theory, claims under Section 3729(a)(1)(B) may only be based upon factually false claims and express-false-certification claims.[29]

**A.    Solano pleaded a claim under Section 3729(a)(1)(A) with particularity.**

Claims brought under § 3729(a)(1)(A) require plaintiffs to show falsity, materiality,

---

[26] *Polukoff*, 895 F.3d at 741.

[27] *Id.*

[28] *Universal Health Servs.*, 579 U.S. at 181.

[29] *Lemmon*, 614 F.3d at 1168; *Wagner*, 2017 WL 6329850, at *6 ("In contrast to 31 U.S.C. § 3729(a)(1)(A), only factually false claims and express false certification [claims] are actionable under 31 U.S.C. § 3729(a)(1)(B).").

and knowledge.[30] Furthermore, plaintiffs must plead with particularity the underlying schemes that allegedly resulted in false claims.[31] Therefore, to survive a motion to dismiss, it is insufficient to simply plead the underlying scheme; rather, "the complaint must provide enough information to describe a fraudulent scheme to support a plausible inference that false claims were submitted."[32]

>    1.   *The Complaint gives rise to an inference that Defendants' involvement in the alleged Conservative Care scheme resulted in false claim submissions.*

Solano's allegations meet Rule 9(b)'s heightened pleading standard with respect to the alleged Conservative Care scheme. Defendants argue that because Solano gave no specific examples of false submission of claims, his claims fail under Rule 9(b). But this position is contrary to caselaw, which, as discussed above, requires only that a False Claims Act plaintiff "show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme."[33] Solano has done so.

With respect to the Conservative Care scheme, Solano describes in significant detail

---

[30] *See Lemmon*, 614 F.3d at 1168; *Wagner*, 2017 WL 6329850, at *6.

[31] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507, 203 L. Ed. 2d 791 (2019).

[32] *Lemmon*, 614 F.3d at 1173.

[33] *U.S. ex rel. Daron St., M.D. v. Genentech, Inc.*, No. 17-CV-00293-GKF-JFJ, 2024 WL 1143513 (N.D. Okla. Mar. 14, 2024) (emphasis removed) (quoting *Polukoff*, 895 F.3d at 745).

Joint Technology's marketing of its DMEPOS as a liability shield for doctors.[34] Specifically, Solano alleges that Joint Technology submitted claims for reimbursement for medically unnecessary DMEPOS, improperly prescribed to patients who only needed pain treatment.[35] This sufficiently describes the alleged scheme as to give rise to an inference that Defendants knowingly caused false claims to be submitted. Thus, Solano has afforded Defendants fair notice of his claims and the grounds on which they rest.

> 2. *The Complaint gives rise to an inference that Defendants falsely certified compliance with the Anti-Kickback Statute.*

Solano's allegations as to the alleged kickback scheme also meet Rule 9(b)'s heightened pleading standard. The Anti-Kickback Statute criminalizes the knowing and willful solicitation, receipt, offer, or payment of "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or kind," in exchange for, among other things, purchasing, ordering, arranging for, or recommending the purchase or ordering of any goods or services for which payment may be made, in whole or in part, under a federal healthcare program.[36]

The Anti-Kickback Statute results in civil liability under the False Claims Act in two ways. First, under the false certification theory, "when an illegal kickback results in a false certification of compliance with the [Anti-Kickback Statute]—or other false statement or record—it violates the [False Claims Act]."[37] A person violates the Anti-

---

[34] Compl. (Dkt. 1), ¶¶70–102.

[35] *Id.* ¶¶ 89, 92, 96, 101, 130.

[36] 42 U.S.C. § 1320a-7b(b)(1)–(2).

[37] *See U.S. ex rel. Schroeder v. Hutchinson Reg'l Med. Ctr.*, No. 17-2060-DDC-BGS, 2025

Kickback Statute so long as one purpose of the offer or payment is to "induce or reward the referral or recommendation of business . . . to a program under which payments may be made from federal funds."[38] To sufficiently state a claim arising under the Anti-Kickback Statute and the False Claims Act, a plaintiff need only "plead with particularity that [the defendants] made kickbacks with the intent of inducing referrals, and plead 'particular details of a scheme . . . paired with reliable indicia that lead to a strong inference that claims were actually submitted[.]'"[39]

Second, in 2010, Congress amended the Anti-Kickback Statute to provide an express link to the False Claims Act. Subsection (g) of the Anti-Kickback Statute provides that "[i]n addition to the penalties provided for in [the Anti-Kickback Statute], a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes [of the False Claims Act]."[40] This operates to create a False Claims Act violation "wholly apart from" the Anti-Kickback Statute false certification

---

WL 885217, at *1 (D. Kan. Mar. 21, 2025).

[38] *See Guilfoile v. Shields*, 913 F.3d 178, 189 (1st Cir. 2019); *see also United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000) ("[A] person who offers or pays remuneration to another person violates the Act so long as one purpose of the offer or payment is to induce Medicare or Medicaid patient referrals.").

[39] *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013), *aff'd sub nom. U.S. ex rel. Parikh v. Brown*, 587 F. App'x 123 (5th Cir. 2014) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

[40] 42 U.S.C. § 1320a-7b(g), as amended by the Patient Protection and Affordable Care Act, Pub. L. No. 1110148, 124 Stat. 119 (2010).

theory.[41] Solano raises both in his Complaint.[42]

And he has sufficiently pleaded Joint Technology's kickback scheme with particularity under both theories. He alleges that Joint Technology improperly paid doctors and provided them with assistants in order to induce them to prescribe Joint Technology's products under the guise of rent payments.[43] He also alleges that Joint Technology improperly paid its salesforce on a commission-only basis.[44] Solano has sufficiently described the schemes to support an inference that false claims were submitted as a result of illegal kickbacks.[45]

### B.    Solano pleaded a claim under Section 3729(a)(1)(B) with particularity.

Section 3729(a)(1)(B) of the False Claims Act prohibits the use of a false record or statement to demonstrate to the government that a false or fraudulent claim should be paid. As previously mentioned, claims brought under § 3729(a)(1)(B) may not be based upon an implied-certification theory. Thus, to sustain an express-false-certification claim, Solano must have alleged—with sufficient factual basis—that Defendants knowingly caused a

---

[41] *Schroeder*, 2025 WL 885217, at *1; *United States v. Regeneron Pharms., Inc.*, 128 F.4th 324, 333 (1st Cir. 2025) (recognizing that the 2010 amendment does "not disturb alternative theories of [False Claims Act Liability]," such as false certification, and noting that this is in accordance with Sixth and Eighth Circuit caselaw (first citing *U.S. ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022); then citing *U.S. ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1053 (6th Cir.), *cert. denied*, 144 S. Ct. 224, 217 L. Ed. 2d 80 (2023)).

[42] *See* Compl. (Dkt. 1), ¶¶ 104, 110.

[43] *Id.* ¶¶ 113, 119–23, 138–43.

[44] *Id.* ¶¶ 144, 149–53.

[45] The Court discusses causation in greater detail below. *See infra* Section III.C.3.

false record or statement to be made or used and that the record/statement was material to the government's decision to pay.[46]

Solano alleges that Defendants filed express certifications of compliance with the Anti-Kickback Statute in the reimbursement claims they caused to be filed.[47] When viewed alongside Solano's kickback allegations with respect to Count One, which the Court concludes have met Rule 9(b)'s pleading requirements, Solano's allegations of specific, express certifications of compliance with the Anti-Kickback Statute are also sufficiently pleaded under Rule 9(b).

### C.    Solano's scienter allegations satisfy Rule 9(b).

Defendants argue that Solano failed to plead scienter with particularity. False Claims Act liability only attaches when a defendant submits a false claim knowingly.[48] The False Claims Act defines "knowingly" as acting with "actual knowledge of the information," or with "deliberate ignorance . . . or . . . reckless disregard of the truth or falsity of the information."[49] Rule 9(b) allows plaintiffs to allege knowledge generally, so at this stage Solano is not required to meet a higher pleading standard to demonstrate the knowledge requirement for his False Claims Act claims. Additionally, scienter, like the fraud itself, may be demonstrated by an inference.[50]

---

[46] *Lemmon*, 614 F.3d at 1170.

[47] Compl. (Dkt. 1), ¶ 39–40, 49, 103, 111.

[48] *United States v. The Boeing Co.*, 825 F.3d 1138, 1148 (10th Cir. 2016).

[49] 31 U.S.C. § 3729(b)(1).

[50] *U.S. ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*, No. 16-CV-00268-CMA-NYW, 2018 WL 1375792, at *2 (D. Colo. Mar. 19, 2018) (quoting *In re United Telecomm's, Inc.,*

Defendants recognize that knowledge may be alleged generally.[51] But they again argue that because Solano did not present an example of a defendant submitting a false claim, he did not adequately plead scienter. Solano alleges that Defendants acted knowingly.[52] Moreover, the well-pleaded facts give rise to an inference that defendants acted with deliberate ignorance or reckless disregard of the truth. Specifically, Solano alleges that Joint Technology intentionally creates false or misleading documentation to support the medical necessity of its DMEPOS.[53] A reasonable factfinder could infer from this allegation, taken as true, that Defendants acted knowingly.

In support of their position, Defendants rely on *United States ex rel. Morton v. A Plus Benefits, Inc.*, which, applying the False Claims Act to ERISA, held that the False Claims Act's scienter requirement cannot be satisfied by "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ . . . ."[54] But the Tenth Circuit "explicitly cabined *Morton* to the facts in that case" and "did not create a bright-line rule that a medical judgment can never serve as the basis for an [False Claims Act] claim."[55] "[C]laims for medically unnecessary treatment are actionable under the [False Claims Act]."[56] And Solano has pleaded with particularity that

---

*Sec. Litig.*, 781 F. Supp. 696, 702 (D. Kan. 1991)).

[51] Resp. to Mot. to Dismiss (Dkt. 49), at 10.

[52] Compl. (Dkt. 1), ¶¶ 18–20, 45, 49, 103.

[53] *Id.* ¶¶ 78–79, 82.

[54] 139 F. App'x 980, 983 (10th Cir. 2005) (citation and internal quotation marks omitted).

[55] *Polukoff*, 895 F.3d at 742.

[56] *Id.* Defendants present an alternative inference as to the Conservative Care program: that Defendants intended to lower the use of prescription medications for pain. Defendants'

caused claims to be submitted for medically unnecessary treatment.

### D.    Solano sufficiently distinguished his claims among Defendants.

Next, Defendants argue that Solano does not allege which specific defendant submitted false claims. But, as Solano argues in response, the Complaint clearly sets out the known players and their involvement in the various schemes. Defendants attempt to reframe Solano's claims against Barr and Patton as being related to the information that they sent to Solano during his training. But the well-pleaded allegations in the Complaint show that Patton and Barr were directly involved in the marketing of two programs that were causing the submission of false claims.[57] As for the other Defendants, Armitage and Sessoms were physicians who referred patients to Joint Technology through the Conservative Care program and who signed on to the In-House Mobility DME Agreement in North Carolina.[58] And John Doe Defendants 1–100 refers "to doctors in the United States who knowingly received kickbacks from Joint Technology."[59] Accordingly, the Complaint, read as a whole, puts all the defendants on notice of the claims against them.

For the foregoing reasons, Solano's allegations in the Complaint based on violations of Sections 3729(a)(1)(A) and 3729(a)(1)(B) satisfy Rule 9(b)'s heightened pleading standard for fraud-based claims.

---

proposed inference, however, is unsupported by the Complaint. Solano clearly alleges that Joint Technology primarily marketed itself as risk protection to doctors, not as a means of lowering their opioid prescriptions. Compl. (Dkt. 1), ¶¶ 74, 77–79.

[57] Compl. (Dkt. 1), ¶¶ 17, 78–79, 88, 94, 121, 123.

[58] *Id.* ¶¶ 18–19, 94.

[59] *Id.* ¶ 20.

### III.    Solano's False Claims Act claims satisfy the requirements of Rule 12(b)(6).

Defendants next argue that Solano has not stated a claim as to either of the above-identified schemes. But taking the above facts as true, drawing all reasonable inferences in Solano's favor, and for the reasons explained above in relation to Rule 9(b), Solano has stated claims under the False Claims Act.

#### A.    Defendants' alternative explanation for the DMEPOS prescriptions does not defeat Solano's well-pleaded facts.

Defendants argue that the Complaint incorrectly assumes that DMEPOS can never be medically necessary to treat pain, when in fact, an orthotic device can be prescribed to treat pain when it is the result of an underlying condition. That is not, however, Solano's allegation. Solano alleges that Defendants caused reimbursement claims to be filed for DMEPOS that was prescribed to solely treat pain itself, not an underlying condition.[60] This is supported by the well-pleaded allegations that Joint Technology would specifically go through the doctors' files to find existing opioid users and push the doctors to prescribe them a Joint Technology product.[61] As Solano alleges, the doctor would have presumably already made a determination that DMEPOS was not medically necessary to treat that patient.[62] And at this stage, this Court takes Solano's allegations as true and makes all reasonable inferences in his favor, not Defendants.

---

[60] *Id.* ¶¶ 89, 92, 96, 101, 130.

[61] Compl. (Dkt. 1), ¶¶ 128, 130, 140.

[62] *Id.* ¶¶ 96, 101, 130.

**B.    Defendants have not shown that Solano must be an "original source."**

Defendants also argue that Solano improperly lacks firsthand knowledge as to his allegations. In support, they rely on 31 U.S.C. § 3730(e)(4), which "compels courts to dismiss *qui tam* claims if (1) 'substantially the same allegations . . . were publicly disclosed,' unless (2) the relator is 'an original source of the information.'"[63] As Solano argues, however, Defendants have made no argument that the same allegations have been publicly disclosed. Accordingly, Solano's status as an original source has no bearing here.[64]

**C.    Solano plausibly alleges Anti-Kickback Statute violations.**

Defendants argue that Solano failed to allege an Anti-Kickback Statute violation. Specifically, they first contend that Solano did not allege how he came to know of the kickback schemes. But the question, at this stage, is whether, taken as true, the well-pleaded facts in the Complaint state a claim. And regardless, Solano has alleged how he acquired such knowledge.[65]

Defendants next argue that Solano references only one rental agreement generally without specifying the doctor's office that is party to the agreement. But Solano does not

---

[63] *Reed*, 923 F.3d at 741 (quoting 31 U.S.C. § 3730(e)(4)(A)).

[64] *See id.* at 742 n.2 (Courts are to consider whether the relator is an original source only after finding that the public disclosure bar applies at all). Defendants specifically argue that the Complaint gives rise to no inference that Solano ever worked in a doctor's office, spoke with a doctor or patient, reviewed a single medical record, or was able to evaluate whether prescribed DMEPOS were medically necessary. Defendants again cite to Solano's lack of examples, emphasizing their position that the Complaint only contains Solano's speculation. This, they argue, keeps him from stating a plausible claim and only stating a possible claim. But the Complaint plausibly alleges that he received training materials from Patton and Barr as to the Conservative Care program. Compl. (Dkt. 1), ¶¶ 88, 121, 123.

[65] Compl. (Dkt. 1), ¶¶ 88, 121, 123.

allege the existence of just one agreement. He asserts that every doctor who entered into the In-House Mobility DME Agreement entered into a bogus rental agreement, analogous to the one he describes.[66] This includes Armitage and Sessoms.[67]

Finally, Defendants generally argue that the Complaint is full of conclusory statements. They only reference one example: Solano's allegation that Defendants knew there was no need for the office space. But knowledge may be alleged generally. And the Complaint, as a whole, supports the plausible inference that Defendants knew that the office space was unnecessary.

Defendants also raised several additional arguments as to the alleged kickback scheme for the first time in reply. But they are to no avail, for the reasons discussed below.

    *1.    The Complaint plausibly alleges that the In-House DME Agreements violated the Anti-Kickback Statute.*

Defendants argue that the rental agreements fall into the Anti-Kickback Statute safe harbor. But this is an affirmative defense, which Defendants bear the burden of proving at trial.[68] Moreover, Solano alleges facts to show that the In-House DME Agreements did not comply with the safe harbor.[69]

Defendants also argue that the Complaint itself shows that the use of in-office assistants are a legitimate practice. But as the Complaint alleges, the use of the in-office

---

[66] *Id.* ¶ 119.

[67] *Id.* ¶ 94.

[68] *Schroeder v. Hutchinson Reg'l Med. Ctr.*, No. 17-2060-DDC-BGS, 2024 WL 4298655, at *12 (D. Kan. Sept. 26, 2024) (citation omitted).

[69] Compl. (Dkt. 1), ¶¶ 122–127.

assistants here is directly tied to the monetary kickback that Solano alleges the doctors receive. Specifically, part of the in-office assistant's role is to determine when to terminate the rental agreement, i.e., when there are no more existing opioid-using patients.[70]

>    2.    *The Complaint plausibly alleges that Joint Technology's alleged sales force payment structure violates the Anti-Kickback Statute.*

Defendants next contend that Solano has no firsthand knowledge as to how Joint Technology pays its sales force. But the Complaint alleges that Joint Technology offered Solano a contract that he alleges is identical to the terms and conditions with all of Joint Technology's sales force.[71] United States District Judge Vicki Miles-LaGrange previously found that Joint Technology's commission-based sales agreement violated the Anti-Kickback Statute.[72] Solano alleges that the only substantive difference between his and the other agreements used by Joint Technology and the one in *Weaver*, is that it refers to its salespeople as employees.[73] Solano alleges, however, that they are employees in name only, and are actually independent contractors, who, like in *Weaver* were to receive compensation tied to the solicitation of referrals to government healthcare programs.[74]

---

[70] *Id.* ¶¶ 126, 140.

[71] *Id.* ¶ 150.

[72] *See Joint Tech., Inc. v. Weaver*, No. CIV-11-846-M, 2013 WL 257075 (W.D. Okla. Jan. 23, 2013), *aff'd*, 567 F. App'x 585, 589 (10th Cir. 2014) ("[A]n essential part of the Agreement (consideration) consisted of Joint [Technology] paying [the sales representative] to solicit Medicare or Medicaid referrals, in violation of the [AKS]." (cleaned up)).

[73] Compl. (Dkt. 1), ¶ 173.

[74] *Id.* ¶¶ 152–53, 173.

3.    *The Complaint plausibly alleges causation.*

Finally, Defendants argue that Solano has not shown how a violation of the Anti-Kickback Statute resulted in false claims pursuant to the False Claims Act. It only attacks Solano's pleadings arising under Subsection (g), which, as discussed above, is just one of the two theories of liability available under the Anti-Kickback Statute. Again, the 2010 amendment says that "a claim that includes items or services resulting from a violation of this section [of the Anti-Kickback Statute] constitutes a false or fraudulent claim for purposes of [the False Claims Act]."[75] Circuit courts are split as to what kind of causation the phrase "resulting from" requires. The First, Sixth, and Eighth Circuits have concluded that its plain textual meaning requires a plaintiff to show "but-for causation."[76] The Third has held that a mere "link" between the kickback and the claim suffices.[77] The Tenth has yet to weigh in.

Solano argues that this Court "appeared" to adopt the more permissive interpretation in *United States v. Novo Nordisk, Inc.*[78] Not so. In *Novo Nordisk*, this Court said that: "[a] person violates the [Anti-Kickback Statute] so long as one purpose of the offer or payment is to 'induce or reward the referral or recommendation of business . . . to a program under which payments may be made from federal funds.'"[79] It was discussing the theory of

---

[75] 42 U.S.C. § 1320a-7b(g).

[76] The First, Sixth, and Eighth Circuits have articulated this view. *Regeneron Pharms.*, 128 F.4th at 330 (1st Cir. 2025); *Martin*, 63 F.4th at 1052; *Cairns*, 42 F.4th at 834–35.

[77] *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 98 (3d Cir. 2018).

[78] No. CIV-15-00114-PRW, 2022 WL 16716299, at *5 (W.D. Okla. Nov. 4, 2022).

[79] *Id.* (footnote omitted) (quoting *Guilfoile*, 913 F.3d at 189).

liability arising under the Anti-Kickback Statute false certification theory, not the 2010 amendment language in Subsection (g).[80] Thus, this Court has not taken a position on the meaning of the phrase "resulting from" in the amendment.

And the Court need not reach a conclusion at this time either. As discussed above, Solano alleges a suspicious arrangement between Joint Technology and its doctors involving unlawful kickbacks under the Anti-Kickback Statute. At this stage, the Court must construe all facts and draw all reasonable inferences in Solano's favor. A reasonable factfinder could conclude that but for the illegal kickbacks, submission of the false claims to the government would have never occurred.[81] Accordingly, Solano has satisfied the pleading standard, regardless of whether "resulting from" requires but-for causation or just some link.

The Court therefore concludes that Solano stated a claim as to Claims One and Two. Accordingly, the Court **DENIES** the Motion to Dismiss (Dkt. 46) as to Claims 1 and 2.

## IV.    Solano only pleaded a North Carolina state law claim with particularity.

Defendants also point out that the Complaint raises claims of violations of the law of 29 states and the District of Columbia, without alleging that Defendants submitted false claims or worked in those places. Solano generally alleges violations in each of the states, without providing facts showing that false claims were filed in any except for North

---

[80] *Id.* at n.39 (citing 42 U.S.C. § 1320a-7b(b)). Similarly, the cases on which this Court relied discussed the same subsection. *See id.* at n.40 (first citing *Guilfoile*, 913 F.3d at 189; then quoting *McClatchey*, 217 F.3d at 835).

[81] *See United States v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2021 WL 4168140, at *24 (D. Kan. Sept. 14, 2021).

Carolina.

As to North Carolina, the Complaint adequately alleges that Armitage and Sessoms engaged in both the Conservative Care Program and the In-House DME Mobility Program in North Carolina. North Carolina's False Claims Act analogue is found in N.C. Gen. Stat. § 1-607. "The North Carolina False Claims Act largely parallels the False Claims Act and is interpreted consistent with it."[82] Accordingly, the Court finds that Solano has stated a North Carolina state law claim with particularity for the same reasons discussed above.[83] The Court therefore **DENIES** the Motion to Dismiss (Dkt. 46) as to Claim 25.

Although Solano generally alleges that the schemes were perpetuated nationwide, this conclusory allegation is insufficient to create a reasonable basis to infer that false claims were submitted as part of the schemes in 29 other states or the District of Columbia. To be sure, Solano need not allege the "where" of "every single submission of a false claim" to sufficiently allege nationwide fraud.[84] But he must provide more than a single representative example of alleged fraud in one state.[85] Therefore, because the Complaint pleads with particularity alleged fraudulent claims only in the State of North Carolina, the

---

[82] *U.S. ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472 (4th Cir. 2025).

[83] *See id.* (discussing only the federal False Claims Act and noting that the circuit court's "analysis and conclusions appl[ied] equally" to the plaintiff's North Carolina False Claims Act claim).

[84] *See United States ex rel. Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 731 (N.D. Ill. 2020).

[85] *Id.* (dismissing state-law claims in twenty-eight states and the District of Columbia because a relator "alleged fraud with particularity in just one state"); *Novo Nordisk, Inc.*, 2022 WL 16716299, at *9 (same).

Court **GRANTS** the Motion to Dismiss (Dkt. 46) and **DENIES WITHOUT PREJUDICE** Claims 3–24 and Claims 26–32 for failure to satisfy Rule 9(b)'s heightened pleading standard.

In its Response and Sur-Reply, Solano requests leave to amend its Complaint to cure any deficiencies. But the Local Civil Rules (1) prohibit parties from including a motion in their response brief; and (2) require parties seeking leave to amend to "attach the proposed pleading as an exhibit to the motion."[86] Such "drive-by requests to amend the complaint" are insufficient to warrant leave.[87] Accordingly, the Court denies his request.

### *Conclusion*

Because Solano's Notice (Dkt. 57) does not comply with the Local Civil Rules, the Court **GRANTS** the Motion to Strike (Dkt. 58) and **STRIKES** the Notice (Dkt. 57).

Additionally, the Court concludes that Solano has successfully pleaded with particularity claims arising under the federal and North Carolina false claims acts. He has not, however, pleaded his other claims with particularity. Accordingly, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss (Dkt. 46). The Court **DENIES** the Motion as to Claims 1, 2, and 25. The Court **GRANTS** the Motion as to Claims 3–24, and 26–32, and **DISMISSES** them **WITHOUT PREJUDICE**.

---

[86] LCvR7.1(c); 15.1.

[87] *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (citation omitted).

**IT IS SO ORDERED** this 31st day of March 2025.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE